UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                       :

UNITED STATES OF AMERICA           :

                                         :

                    -against-             :

                                         :

GODEL SEZANAYEV, ET AL.,          :

                            Defendants.   :

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/22/2018__

17 Cr. 262 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Defendants are charged in a three-count indictment in connection with three separate alleged conspiracies to defraud sellers of diamonds. Defendants bring various pre-trial motions, including motions for separate trials, to sever counts, to dismiss based on venue and to suppress evidence.

## I.     BACKGROUND

       Defendants Godel Sezanayev, Mark Mullakandov, Albert Foozailov, Imanil Muratov, Manashe Sezanayev, Nathan Itzchaki, Arkadiy Israilov, Ali Javidnezhad, Mark Natanzon, Sholom Muratov, Menachem Abramov and Nizamuden Akbari were arrested pursuant to a thirty-page Complaint, sworn to March 31, 2017. Famliarity with its detailed allegations is assumed.

       On May 1, 2017, Defendants were charged in a three-count indictment as follows:

Count One charges Godel Sezanayev, Foozailov, Muratov, Manashe Sezanayev[1] and Javidnezhad with conspiracy to commit wire fraud by obtaining diamonds from one individual without full payment in Manhattan, New York.

Count Two charges Godel Sezanayev, Israilov and Akbari with conspiracy to commit wire fraud by paying for diamonds with a worthless check at a Las Vegas trade show.

Count Three charges Mullakandov, Foozailov, Itzchaki, Natanzon, Sholom Muratov and Abramov with conspiracy to commit mail fraud by obtaining diamonds without full payment from several individuals in Mumbai, India.

The Court has scheduled three trials, largely focused on each respective count of the Indictment as follows:

| Trial & Charge | Defendants to be Tried | Defendants Charged but not Tried | Trial Date |
|---|---|---|---|
| Trial One / Count One: Conspiracy to Commit Wire Fraud | Godel Sezanayev (Counts One & Two) Imanil Muratov Ali Javidnezhad | Albert Foozailov | June 18, 2018 |
| Trial Two / Count Two: Conspiracy to Commit Wire Fraud | Arkadiy Israilov Nizamuden Akbari | Godel Sezanayev | June 25, 2018 |
| Trial Three / Count Three: Conspiracy to Commit Mail Fraud | Mark Mullakandov Albert Foozailov (Counts One & Three) Nathan Itzchaki Mark Natanzon Sholom Muratov Menachem Abramov | | October 9, 2018 |

[1] Manashe Sezanayev filed pretrial motions, but has since pleaded guilty. Manashe Sezanayev's motions are thus denied as moot. To the extent that other Defendants joined in his motions, Manashe Sezanayev made no motion that was applicable to other Defendants that another Defendant did not also make.

## II.     MOTIONS TO SEVER

### A.     Applicable Law

Federal Rule of Criminal Procedure 8(b) allows joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The "'same series of acts or transactions' language . . . mean[s] that joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (Sotomayor, J.) (some internal quotation marks and citations omitted); *accord United States v. Rutigliano*, 614 F. App'x 542, 547 (2d Cir. 2015) (summary order). "[M]embers of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." *Rittweger*, 524 F.3d at 178. In analyzing joinder under Rule 8(b), courts must "apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice." *Id.* at 177 (internal quotation marks and citation omitted).

Federal Rule of Criminal Procedure 14(a) states, "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Severance should be granted "under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *accord United States v. Cacace*, 796 F.3d 176, 192 (2d Cir. 2015).

Circumstances that may warrant severance include allowing the jury to consider evidence that otherwise would not be admissible if the defendant were tried alone, or conversely, barring essential exculpatory evidence that would be admitted if the defendant were tried alone. *Id.* "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system, as they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011) (internal quotation marks and citations omitted). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39. "'[L]ess drastic measures [than severance], such as limiting instructions, often will suffice' to cure any risk of prejudice and permit joinder." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (quoting *Zafiro*, 506 U.S. at 539). "Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials. Even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks and citations omitted).

With conspiracy charges, "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988); *accord United States v. Van Praagh*, No. 14 Cr. 189, 2014 WL 4954162, at *5 (S.D.N.Y. Oct. 1, 2014), *aff'd sub nom. United States v. Lyle*, 856 F.3d 191 (2d Cir. 2017). "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States*

*v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998); *accord United States v. Parris*, No. 13 Cr. 17, 2014 WL 2745332, at *10 (S.D.N.Y. Jun. 17, 2014).

Co-defendants having mutually antagonistic defenses may be a ground for severance, but not "where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions."[2] *O'Connor*, 650 F.3d at 858. Under Second Circuit law, defenses are "mutually antagonistic" if

> the defendant must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other. However, mutually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.

*Salameh*, 152 F.3d at 116 (internal quotation marks and citations omitted) (italics in original).

In conspiracy trials, movants commonly "seek severance essentially on the ground that they will argue that they are not guilty because they were duped by other members of the conspiracy." *Hameedi*, 2017 WL 5152991, at *4. "Finger pointing" is not a basis for severance. *See United States v. Cardascia*, 951 F.2d 474, 485 (2d Cir. 1991) (affirming the denial of severance where a defendant argued he was innocent and "implicated only by the uncorroborated assertions of his codefendants"); *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990)

---

[2] Mullakandov's reliance on *United States v. Serpoosh*, 919 F.2d 835 (2d Cir. 1990) is misplaced. The Supreme Court's decision in *Zafiro* overruled *Serpoosh*'s holding that "severance may be required 'when the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.'" *United States v. Haynes*, 16 F.3d 29, 31-32 (2d Cir. 1994) (quoting *Serpoosh*, 919 F.2d at 838) (alteration in original). *Zafiro* explicitly provides that "mutually antagonistic defenses are not prejudicial *per se,*" and that it is up to the district court's discretion to tailor relief, if any. *Zafiro*, 506 U.S. at 938. Mullakandov "cite[s] no case in the twenty-four years since *Zafiro* was decided in which the Second Circuit Court of Appeals concluded that severance should have been granted based on the existence of allegedly antagonistic defenses." *United States v. Hameedi*, No. 17 Cr. 137, 2017 WL 5152991, at *4 n. 1 (S.D.N.Y. Nov. 3, 2017).

("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance."); *Hameedi*, 2017 WL 5152991, at *4 (denying severance).

## B.     Application

### 1.   Motions to Sever Counts One, Two and Three

Akbari, Israilov, Godel Sezanayev and Mullakandov move to sever the trial of Counts One, Two and Three from one another.  For the reasons below, these motions are denied.

#### a.   Akbari and Israilov

Akbari and Israilov are charged only in Count Two and will be tried in Trial Two.  Their motion to sever Count Two is denied as moot.

#### b.   Godel Sezanayev and Mullakandov

Godel Sezanayev moves to sever Count One, and Mullakandov moves to sever Count Three.  These motions are largely moot as each count is set to proceed at generally separate trials.  The Government brings two charges against Godel Sezanayev (Counts One and Two) and Foozailov (Counts One and Three) but each Defendant is slated for only one trial.  Some evidence concerning Count Two, therefore, will be introduced as to Godel Sezanayev in the Count One trial, and some evidence concerning Count One as to Foozailov will be introduced in the Count Three trial.  Given the restricted scope of such evidence, "limiting instructions . . . will suffice to cure any risk of prejudice and permit joinder."  *United States v. Page*, 657 F.3d at 129 (quoting *Zafiro*, 506 U.S. at 539) (internal quotation marks omitted).  These motions to sever particular counts are consequently denied.

### 2. Motions for a Separate Trial From Co-Defendants

#### a. Sholom Muratov

Sholom Muratov, who is charged in Count Three and will be tried in Trial Three with his alleged co-conspirators, moves for a separate trial from his co-Defendants. For the follow reasons, this motion is denied.

The Government has sufficiently pled a non-frivolous conspiracy charge, which permits joinder. *Nerlinger*, 862 F.2d at 973. Sholom Muratov has not shown a serious risk that a specific trial right will be compromised, or that a jury could not make a reliable judgment on his guilt or innocence with appropriate limiting instructions. *See, e.g.*, *United States v. Mirilishvili*, No. 14 Cr. 810, 2015 WL 5820966, at *15 (S.D.N.Y. Oct. 2, 2015) (holding limiting instructions would offset any potential prejudice from trying a defendant along with her ten codefendants).

Sholom Muratov contends that he will suffer undue prejudice from the alleged weight of the evidence against his fellow co-Defendants compared to his relatively minor role, citing *United States v. Branker*, 395 F.2d 881 (2d Cir. 1968), and *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965). This argument is unpersuasive. First, as a general matter, various amounts of proof "are inevitable in any multi-defendant trial." *Spinelli*, 352 F.3d at 55 (internal citations and quotation marks omitted). Second, *Branker* is distinguishable. The defendants who should have been severed were charged with fewer than ten of the more than eighty counts in the indictment, or were charged with the repetition of a single criminal act a number of times. 395 F.2d at 888. Most significant, the *Branker* indictments contained only one count of conspiracy, which the court dismissed at the close of the Government's case. *Id.* at 887. Even though only substantive counts were submitted to the jury, jurors had heard evidence that would have been inadmissible if the case had proceeded on just the substantive charges from the outset. *Id.* at 883, 888. In

contrast, Sholom Muratov will be tried on a single count of conspiracy with alleged co-conspirators, without any underlying substantive charge. Third, *Kelly* also is distinguishable; the defendant who should have been severed in that case was not even mentioned until "three months or more" into the trial. 349 F.2d at 759. That defendant's illnesses and absences also prolonged the trial, which the jury apparently resented. *Id.* This trial in contrast is estimated to last no more than several weeks, and no delays are anticipated.

### b. Abramov

Abramov is charged in Count Three and will be tried in Trial Three. He seeks a separate trial from his co-Defendants based on *Bruton v. United States*, 391 U.S. 123 (1968). For the following reasons, this motion is denied.

Abramov contends that admission of taped "conversations between co-defendants and alleged victims or confidential informants" is crucial to his defense but anticipates co-Defendants would seek to have the tapes excluded or heavily redacted under *Bruton*. *Bruton* held that "admission of a non-testifying co-defendant's confession naming the defendant as a perpetrator at their joint trial violates the latter's Sixth Amendment right to cross-examination." *Lyle*, 856 F.3d at 203 (citing *Bruton,* 391 U.S. at 135–36).

Abramov's argument fails because the taped conversations are out-of-court statements and are inadmissible hearsay absent some exception to the hearsay rule. *See* Fed. R. Evid. 802. Abramov has not specified what tape recorded statements he would offer, nor on what basis they could be admitted. For example, while the Government could rely on Federal Rule of Evidence Rule 801(d)(2) to offer the taped co-conspirator statements in furtherance of the conspiracy, or offer Abramov's own statements as party admissions, Abramov could not rely on those

exceptions to the hearsay definition because they apply only to statements "offered against an opposing party." Fed. R. Evid. 801(2).

### c. Godel Sezanayev

Godel Sezanayev is charged in Counts One and Three and will be tried on both counts in Trial One with his alleged co-conspirators in the Count One conspiracy. He moves for a separate trial from his co-Defendants, except does not seek a separate trial on what he describes as the first scheme of four alleged in Count One. For the following reasons, this motion is denied.

Godel Sezanayev is the only defendant in the Count One trial who has a Count Two charge against him. As to Count One, the Government has sufficiently pled a non-frivolous conspiracy charge in Count One, which permits joinder with his alleged co-conspirators in that count. *Nerlinger*, 862 F.2d at 973. As to Count Two, only evidence admissible against Godel Sezanayev will be heard. Evidence of alleged co-conspirators' acts in furtherance of either conspiracy is admissible against him. *See Salameh*, 152 F.3d at 111; *accord Parris*, 2014 WL 2745332, at *10. Thus, he will not prejudiced on either count by the admission of prejudicial evidence inadmissible against him. Even if there were some risk of prejudice or confusion, that risk does not compel severance. *See Zafiro*, 506 U.S. at 539; *Rittweger*, 524 F.3d at 179. The potential for prejudice would be adequately mitigated by limiting instructions that explain "when evidence could not be considered against a particular defendant" and a jury charge that explains "that the jurors must consider the case against each defendant separately." *Rittweger*, 524 F.3d at 179; *see, e.g.*, *Mirilishvili*, 2015 WL 5820966, at *15 (holding limiting instructions would offset any potential prejudice from trying a defendant along with her ten codefendants).

Godel Sezanayev's argument regarding antagonistic defenses between him and Israilov and Akbari is moot, as these Count Two Defendants and the charge against them will be tried

separately from Godel Sezanayev. Finally, for the reasons stated in Section II.B.3 below, Count One does not improperly join multiple schemes or provide a basis for multiple trials of allegedly separate schemes charged in that count.

### d. Mullakandov

Mullakandov is charged in Count Three and will be tried in Trial Three with his alleged co-conspirators. He moves to sever his trial from his co-Defendants. For the following reasons, this motion is denied. The Government has sufficiently pled a non-frivolous conspiracy charge in Count Three, which permits joinder. *Nerlinger*, 862 F.2d at 973. Mullakandov has not shown a serious risk that a specific trial right will be compromised, or that a jury could not make a reliable judgment on his guilt or innocence with appropriate limiting instructions. His arguments to the contrary are unpersuasive as explained below.

**Guilt by association.** Mullakandov argues that although he is charged only in Count Three, the jury will hear about "two separate conspiracies" and "for the most part, unrelated defendants." This argument is largely moot as the Count Two Defendants and all but one of the Count One Defendants will be tried separately. While the Count Three jury will also hear evidence as to Foozailov on Count One, a jury can be provided proper limiting instructions as to the applicability of that evidence only to Foozailov.

***Bruton* issues.** Mullakandov argues that the out-of-court statements by co-Defendants that were recorded by the FBI will present a *Bruton* issue.[3] First, *Bruton* does not apply to statements made in furtherance of the conspiracy, and the FBI recordings are of statements made, to the Court's knowledge, during the conspiracy and not in a custodial or post-arrest

---

[3] Akbari and Israilov similarly raise a "[p]otential *Bruton* [i]ssue" that would arise if the Government intends to offer a statement of a co-defendant that would tend to implicate either of them respectively.

environment. *United States v. DeVillio*, 983 F.2d 1185, 1193–94 (2d Cir. 1993) (finding no *Bruton* violation where the statements were admissible as co-conspirator statements made in furtherance of the conspiracy); *United States v. Nouri*, No. 07 Cr. 1029, 2009 WL 1726229, at *1 (S.D.N.Y. Jun. 17, 2009) ("There is no *Bruton* problem because the statements were made in the context of the conspiracy and not in a custodial or post-arrest situation."). Second, without knowing what statements the Government intends to use, and what redactions Defendants will propose, this motion is premature. The Government has agreed to identify co-defendant statements it intends to use at trial at least two weeks before motions in limine are due. Mullakandov (and any other similarly situated Defendants) shall promptly raise any *Bruton* issues once apprised of the Government's evidence.

**Conflicting trial strategies.** Mullakandov argues if *Bruton* requires redactions, other Defendants will want to present full and unaltered conversations to the jury for their defense, and in those conversations they blame Mullakandov. However, without knowing what conversations other Defendants will seek to admit into evidence, or for what purpose, this argument is premature. *See United States v. Schlegel*, No. 06 Cr. 0550, 2009 WL 3837305, at *3 (E.D.N.Y. Nov. 16, 2009) (noting that speculation regarding a co-defendant's arguments is unpersuasive). Defendants shall provide at least forty-eight-hours' notice to all counsel and the Court of their intention to introduce co-defendant statements at trial; and any Defendant objecting on *Bruton* grounds, shall do so at least twenty-four hours before such statement is to be introduced.

**Antagonistic defenses.** Mullakandov does not provide a sufficient basis for a severance based on antagonistic defenses. He seeks severance assuming that his fellow co-Defendants will blame him as the "head of the scheme," while Mullakandov will deny such allegations. "The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism

11

that requires a severance." *Villegas*, 899 F.2d at 1346; *accord Hameedi*, 2017 WL 5152991, at

*4. Instead, a defendant must show that acceptance of the position of one defendant tends to

preclude the acquittal of another, and that if it did, that such prejudice could not be cured by jury

instruction. *See, e.g.*, *United States v. Escobar*, 462 F. App'x 58, 66 (2d Cir. 2012). "The mere

fact that defense theories are 'inconsistent' is insufficient under this standard." *Id.* (citing

*Salameh*, 152 F.3d at 116).

The tape excerpts Mullakandov identifies do not preclude his defense. The November

10, 2016, meeting between Foozailov, Itzchaki and Victim-2[4] does not necessarily implicate

Mullakandov. In that conversation, among other things, Foozailov said Mullakandov took

Victim-2's diamonds from Foozailov, and Itzchaki said Mullakandov's customer had taken most

of Victim-2's diamonds and that Mullakandov had given Itzchaki a bad check. These statements

could indicate that Mullakandov took most of Victim-2's diamonds and provided them to a

customer, who failed to pay or gave Mullakandov a bad check, which resulted in Mullakandov

giving a bad check to Itzchaki. Mullakandov's December 23, 2016, conversation with Victim-2

is consistent with this interpretation, since Mullakandov told Victim-2 that he provided the

merchandise to another person who still had not paid.

The December 21, 2016, conversations[5] do not support severance based on antagonistic

defenses as the conversations do not exonerate anyone. Instead they inculpate Muratov,

---

[4] For the purposes of this Opinion and Order, the Court uses the terms "Victim-1" and "Victim-2" as they are defined in the Complaint.

[5] On December 21, 2016, Sholom Muratov told Victim-2 that Mullakandov had paid Sholom Muratov and Abramov to act as buyers, including paying their travel expenses, that Foozailov and Mullakandov were the heads of the scheme. Sholom Muratov also said that Foozailov and Mullakandov had approached Sholom Muratov to ask him to not talk, and Mullakandov threatened to blackmail Sholom Muratov if he did. Similarly, Abramov said that Mullakandov was the head of the scheme, and Foozailov and Itzchki were second-in-charge.

Abramov, Foozailov, Itzachki and Mullankandov as co-conspirators. Conspiracy liability does not depend on who was the "head" and who was a willing subordinate -- all co-conspirators are equally culpable.

Even if Defendants did present mutually antagonistic defenses, severance is not required. *Salameh*, 152 F.3d at 116. A district court may tailor relief. *Id.* The Court will instruct the jury that the Government bears the burden of proving its case beyond a reasonable doubt against each Defendant separately, and that the jury must consider the sufficiency of the evidence as to each Defendant separately. *Rittweger*, 524 F.3d at 179. The Court will consider any other limiting instructions requested.

Mullakandov relies on *United States v. Shkreli*, 260 F.Supp.3d 247 (E.D.N.Y. 2018), but it is not a Second Circuit case and does not dictate the result here. Moreover, the court in *Shkreli* specifically found that there were no antagonistic defenses, and instead severed based on the court's finding that the co-defendant would act as a "second prosecutor." 260 F. Supp. 3d at 254–55 ("Thus, the court concludes that the defenses are not mutually antagonistic."). Furthermore, for the reasons stated above regarding the taped conversations of Mullakandov's co-Defendants, *Shkreli* is factually distinguishable.

### 3. Improper Joinder of Alleged Conspiracies in Count One

Godel Sezanayev moves to sever or dismiss various acts in Count One as duplicitous. For the following reasons, this motion is denied.

"[A]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed.R.Crim.P. 8(a)'s requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby." *United States v.*

*Kurniawan*, 627 F. App'x 24, 27 (2d Cir. 2015) (summary order) (internal quotation marks and citation omitted).  The Second Circuit

> has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.  It has been established for at least seventy years that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects.

*United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013) (internal quotation marks and citation omitted).

Applying this standard, Count One is not impermissibly duplicitous because it charges a single *conspiracy* to commit wire fraud by inducing Victim-1 to provide diamond merchandise through false promises of full payment.

Godel Sezanayev's reliance on *United States v. Carrozza*, 728 F. Supp. 266 (S.D.N.Y. 1990) is unpersuasive.  There, joinder was improper where the common plan was based on the use of the same debt collector.  *Id.* at 270.  However, where, as here, alleged acts show "a common goal, not simply a common player or similar criminal behavior," joinder is proper. *United States v. Forde*, 699 F. Supp. 2d 637, 643 (S.D.N.Y. 2010).

## III.     MOTION TO DISMISS COUNT TWO FOR LACK OF VENUE

Godel Sezanayev moves to dismiss Count Two against him for lack of venue.  For the following reasons, this motion is denied.

A criminal defendant must be tried in the district where the crime was committed.  U.S. Const. amend. VI; Fed. R. Crim. P. 18.  "In determining where a crime was committed, we consider Section 3237(a), which governs venue.  That statute provides that an offense 'begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed.'" *United*

*States v. Holcombe*, 883 F.3d 12, 15 (2d Cir. 2018) (citing 18 U.S.C. § 3237(a)).  "Whether venue is proper in a particular district turns on the elements of the underlying crime and where the acts satisfying those elements occurred."  *Id.*  "[V]enue in a conspiracy prosecution is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators."  *United States v. DeLaRosa*, 700 F. App'x 13, 18 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted).

"Where venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue."  *United States v. Chait*, No. 17 Cr. 105, 2017 WL 6502228, at *1 (S.D.N.Y. Dec. 18, 2017); *accord United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016).  The Government ultimately must prove venue at trial by a preponderance of the evidence.  *United States v. Kirk Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018).

Count Two sufficiently alleges venue in this district.  The indictment charges the Count Two Defendants conspired to commit wire fraud "in the Southern District of New York and elsewhere," and that "in the course of the scheme, [they] caused the intended victim, who was in fact a confidential source for law enforcement . . . , to place a telephone call to Godel Sezanayev's New York office."  "[T]he passage of the wire transfer through the Southern District of New York create[s] venue for statutory purposes."  *United States v Brown*, 293 F. App'x 826, 829 (2d Cir. 2008) (summary order) (citing *United States v. Gillboe*, 684 F.2d 235, 239 (2d Cir. 1982)).

## IV.     MOTION FOR DISCLOSURE OF RULE 404(B) OTHER CRIMES, WRONGS OR ACTS

Mullakandov requests that the Government be compelled to provide Defendants with evidence of other crimes, wrongs or acts sixty days before trial.  This motion is denied, but the

Court will hold the Government to its representation that it will "provide notice of Rule 404(b) evidence at a reasonable time."

Federal Rule of Evidence 404(b) provides that, "[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b). "Courts in this Circuit have held that two or three weeks' notice is reasonable[, and] a longer period may be appropriate, depending on the circumstances." *United States v. Vaid*, No. 16 Cr. 763, 2017 WL 3891695, at *13 (S.D.N.Y. Sept. 5, 2017) (alteration in original) (granting thirty days' notice due to the scope of the alleged conspiracy and number of defendants); *see, e.g.*, *United States v. Rahim*, 339 Fed. App'x 19, 23 (2d Cir 2009) (finding one week before trial is reasonable notice); *United States v. Goode*, No. 16 Cr. 529, 2018 WL 919928, at *17 (S.D.N.Y. Feb. 15, 2018) (granting thirty days' notice); *United States v. Rivera*, No. 16 Cr. 175, 2017 WL 1843302, at *1 (S.D.N.Y. May 8, 2017) (granting three weeks' notice); *see also United States v. McDow*, 206 F. Supp. 3d 829, 857 (S.D.N.Y. 2016) (internal quotation marks and citations omitted) ("[Rule 404(b)] establishes no minimum time . . . because the evidence the government wishes to offer may well change as the proof and possible defenses crystallize."). "Sixty days is a significant amount of time and thus inappropriate." *Goode*, 2018 WL 919928, at *17.

Mullakandov has not shown special circumstances warranting departure from the typical practice. His argument that extra time may be needed because some prior acts are likely to "date back several months or years," "may involve significant investigation here and abroad," and "may also involve the issuance of subpoena for telephone, banking and shipping records" is vague and conjectural, and therefore unpersuasive. Mullakandov also cites no case law in

support of an early notice date, other than *United States v. Lewis*, 482 F.2d 632 (D.C. Cir. 1973),

an out-of-circuit case that Mullakandov incorrectly cites for the proposition that district courts

should not "confront the issue of admissibility of 'other crimes, wrongs, or acts,' evidence on the

eve of or in the heat of trial."  In *Lewis,* the court was not considering the disclosure of "other

crimes, wrongs, or acts," but rather the propriety of allowing a character witness to testify to

certain topics.  *Id.* at 643.

## V.  MOTION FOR DISCLOSURE OF *BRADY/GIGLIO*/JENCKS ACT MATERIALS, DISCLOSURE OF WITNESS LIST AND NOTICE OF EXPERT TESTIMONY

### A.  Disclosure of *Brady* Material

Mullakandov asks that all *Brady* material be produced at least thirty days before trial.[6]

The motion is denied for the following reasons.

"*Brady* imposes a constitutional duty on the government to disclose evidence favorable to

the accused where such evidence is material either to guilt or to punishment."  *United States v.*

*Djibo*, No. 16 Cr. 3956, 2018 WL 1801715, at *2 (2d Cir. Apr. 17, 2018) (summary order)

(citations omitted).  "Evidence is favorable if it is either exculpatory or impeaching, and it is

material if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different."  *United States v. Rowland*, 826 F.3d

100, 111 (2d Cir. 2016) (internal quotation marks and citation omitted).

"Although there is no precise deadline for when the government is required to

disclose *Brady* and *Giglio* material, [the Second Circuit has] held that *Brady* requires disclosure

---

[6] Mullakandov moves for disclosure of interviewed individuals and any recorded notes of said interviews, and specifically requests interview statements that "are contradictory or inconsistent with statements of other individuals and contradictory or inconsistent with the theory of the government's case."  To the extent that witness statements are *Brady* material, they are subject to the Court's holding regarding *Brady* material.  To the extent that witness statements are Jencks Act or *Giglio* material, they are subject to the Court's holding on those subjects.

in time for its effective use at trial." *Djibo*, 2018 WL 1801715, at *2 (citing *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008)); *see United States v. Coppa*, 267 F.3d 132, 146 (2nd Cir. 2001) ("[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant.").

The Government apparently has already turned over known *Brady* material and represents that it "is not aware of any additional *Brady* material in this case." The Government further states that it "will continue to provide timely disclosure of any additional *Brady* material when and if any such material comes to light." The Government's good faith representations of its continuing compliance with its *Brady* disclosure obligations is sufficient. *See, e.g.*, *United States v. English*, No. 10 Cr. 431, 2011 WL 3366490, at *5 (S.D.N.Y. July 29, 2011) (finding that the Government's representation that "it is aware of its obligations and has made and will continue to make all required disclosures as appropriate" is sufficient to satisfy its *Brady* obligations).

### B. Disclosure of *Giglio* Material

"Under *Giglio*, the government's *Brady* obligations are extended to 'evidence that is useful to impeach the credibility of a government witness.'" *Djibo*, 2018 WL 1801715, at *2. Mullakandov asks that all *Giglio* material be produced at least thirty days before trial. The motion is denied.

> [I]t is a widely recognized customary practice in this District that *Giglio* material is turned over at the same time as material under the Jen[c]ks Act . . . . Both types of material are typically produced a week or two before the start of trial, depending on the complexity of the case.

*United States v. Wey*, No. 15. Cr. 611, 2017 WL 237651, at *23 (S.D.N.Y. Jan. 18, 2017) (internal quotation marks and citation omitted); *see also United States v. Seabrook*, No. 16 Cr.

467, 2017 WL 3995630, at *3 (S.D.N.Y. Sept. 11, 2017) ("The government has offered to disclose such materials two weeks prior to trial, which is enough time for its effective use.").

The Government states that it will "adhere to its customary practice of producing impeachment material [i.e. *Giglio* materials] at the same time as Jencks Act material . . . shortly before the beginning of trial, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial."  These representations by the Government are sufficient.  *See, e.g.*, *United States v. Gomez*, No. 17 Cr. 602, 2018 WL 501607, at *4 (S.D.N.Y. Jan. 19, 2018).  Mullakandov has not articulated a sound reason nor cited any case law to compel divergence from the Government's customary practice.

### C.    Disclosure of Jencks Act Materials

Mullakandov states his "hope" that Jencks Act (18 U.S.C. § 3500) material will be provided thirty days before trial.  Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500. The Court cannot compel the Government to provide such materials until a witness has testified on direct.  *See Coppa*, 267 F.3d at 145 n. 10 ("The Jencks Act was enacted to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court.").  This motion is accordingly denied.  The Government nevertheless has agreed to produce Jencks Act material before trial at the same time that it produces *Giglio* material.

### D. Disclosure of Witness List

Mullakandov moves to compel the production of the Government's prospective witness list "at a time which will enable the defense enough time to conduct a thorough investigation of these witnesses and prepare cross-examination." This motion is denied.

The Government is not required to provide defense counsel with its witness list prior to trial. Fed. R. Crim. P. 16; *see Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."); *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990) ("Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses in general."). "A district court has discretion to compel pretrial disclosure of . . . government witnesses, but it should grant a request only if the defendant makes 'a specific showing that disclosure is both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case.'" *Rivera*, 2017 WL 1843302, at *2 (quoting *United States v. Cannone*, 528 F.2d 296, 300–01 (2d Cir. 1975)); *Bejasa*, 904 F.2d at 139–40.

Courts in the Second Circuit typically deny motions for the early disclosure of witness lists where, as here, Defendants have not made a specific showing of need. *See, e.g.*, *Rivera*, 2017 WL 1843302, at *2; *United States v. Castellaneta*, No. 6 Cr. 684, 2006 WL 3392761, at *2 (S.D.N.Y. Nov. 20, 2006). As in *United States v. Cannone*, which Mullakandov cites, his "conclusory claim that such disclosure was necessary to its proper preparation for trial" is not sufficient. 528 F.2d at 301–02 (finding a clear abuse of discretion to compel production of a witness list). The following cases, which Mullakandov cites, did not compel production of a

witness list: *United States v. Moseley*, 450 F.2d 506, 510 (5th Cir. 1971) ("[The defendant]'s

contention that the district court erroneously denied her pretrial motion for a witness list must

fail."); *United States v. Goldman*, 439 F. Supp. 337, 350–51 (S.D.N.Y. 1977) ("[T]he witness

list will not be ordered produced because there is no demonstration of particular need by the

defendant."); *United States v. Gallo*, 654 F. Supp. 463, 474 (E.D.N.Y. 1987) (not pertaining to

witness lists).

"The Government has expressed concern about the safety of cooperating witnesses

should their identities be prematurely disclosed." *Rivera*, 2017 WL 1843302, at *2; *see United

States v. Mohamed*, 148 F. Supp. 3d 232, 247 (denying motion to disclose witness list because

"the Government has expressed . . . significant safety and security concerns"). The Government

represents that it will provide a witness list shortly before trial, which is more than it is required

to do. Accordingly, this motion is denied.

### E.  Notice of Expert Testimony

Mullakandov moves for notice of expert testimony and identifying information. In its

opposition, the Government states that it "interprets the defendants' motion as a request for a

written summary of any testimony that the government intends to use under Rules 702, 703 or

705 of the Federal Rules of Evidence. . . . [T]he Government intends to provide the defendants

with appropriate notice in a reasonable timeframe, in accordance with any disclosure schedule

set by the Court." Federal Rule of Criminal Procedure 16 provides that such a summary is

subject to production "at the defendant's request" and must include "the witness's opinions, the

bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P.

16(a)(1)(G).

The motion is granted in part.  The Government shall disclose its intention to use any

such expert during its case-in-chief at trial and the general subject matter of the testimony, as

soon as it determines that it is likely to do so.  The parties shall then meet and confer to attempt

to agree on a disclosure schedule, and shall seek the Court's assistance in the event they are

unable to agree.

## VI.  MULLAKANDOV'S POST-ARREST STATEMENTS

Mullakandov moves to suppress his post-arrest statements.  The Government concedes

that Mullakandov invoked his right to counsel prior to being interviewed, but maintains that he

was asked only routine booking questions that are exempt from *Miranda*.  Mullakandov counters

that the questions went beyond "pedigree information," including, for example, those about

banking institutions, foreign banking institutions, credit cards and property that allegedly was

seized from him.  For the following reasons, this motion is granted in part.

### A.  Applicable Law

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "the prosecution may not use statements

made by a suspect under custodial interrogation unless the suspect (1) has been apprised of his

Fifth Amendment rights, and (2) knowingly, intelligently, and voluntarily waives those

rights."  *United States v. Oehne*, 698 F.3d 119, 122 (2d Cir. 2012) (citing *Miranda*, 384 U.S. at

444–45).  If a suspect invokes his *Miranda* rights to remain silent or to counsel, "interrogation

must stop and the invocation must be 'scrupulously honored.'"  *United States v. Gonzalez*, 764

F.3d 159, 165–66 (2d Cir. 2014) (quoting *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)).

Statements subject to the pedigree (i.e. routine booking) exception do not implicate

*Miranda*.  *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990); *United States v. Davis*, 687 F.

App'x 75, 78 (2d Cir. 2017) (summary order).

> The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest, however, does not ordinarily implicate the prophylactic protections of *Miranda,* which are designed to protect a suspect only during investigative custodial interrogation. Such interrogations customarily involve questions of a different character than those that are normally and reasonably related to police administrative concerns.

*Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005). "But of course 'recognizing a booking exception to Miranda does not mean that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions.'" *Id.* at 222 (quoting *Muniz*, 496 U.S. at 602 n. 14).

Statements subject to the pedigree exception must be related to police administrative concerns, rather than police investigative concerns. *Rosa*, 396 F.3d at 221. Those administrative concerns include identifying the defendant. *See United States v. Robinson*, 16 Cr. 545, 2017 WL 5135598, at *10 (E.D.N.Y. Nov. 1, 2017). Pedigree questions and their responses falling within the pedigree exception often include those targeted at the "arrestee's name, aliases, date of birth, address, place of employment, and marital status," *United States v. Chandler*, 164 F. Supp. 3d 368, 387 (E.D.N.Y. 2016), unless law enforcement should know that those questions are likely to elicit incriminating information. *Compare United States v. Burns*, 684 F.2d 1066, 1068, 1076 (2d Cir. 1982) (assuming without deciding that where the defendant was charged with possession of heroin with intent to distribute, questions about "history of drug use, past record, and personal finances" were mere not pedigree questions); *United States v. Valentine*, 657 F. Supp. 2d 388 (W.D.N.Y. 2009) (identity questions did not fall into the pedigree exception where the law enforcement officers had a "strong suspicion that [the defendant] was an illegal alien in possession of fraudulent documents concerning his identity"); *United States v. Toribio-Toribio*,

No. 09 Cr. 161, 2009 WL 2426015, at *1 (N.D.N.Y. Aug. 6, 2009) (identity questions fell outside the scope of the pedigree exception where the officer knew the defendant had falsely represented his name and citizenship) *with Rosa*, 396 F.3d at 221 (questions to defendant charged with robbery regarding true hair color -- not when the defendant's hair was dyed -- fell within the pedigree exception); *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986) (questions to defendant charged with posession of cocaine with intent to distribute regarding employment fell within the pedigree exception because, *inter alia,* they were helpful in the determination of bail).

These cases dictate that both the question itself and its relationship to the suspected crime are highly relevant in determining whether the question is permissible under the pedigree exception to *Miranda*. "To determine whether the police abused the gathering of pedigree information in a manner that compels *Miranda* protection requires an objective inquiry: Should the police have known that asking the pedigree questions would elicit incriminating information?" *Rosa*, 396 F.3d at 222. "Whether the information gathered turns out to be incriminating in some respect does not, by itself, alter the general rule that pedigree questioning does not fall under the strictures of *Miranda.*" *Rosa*, 396 F.3d at 221.

### B.     Application

Mullakandov's application is granted as to those questions that fall outside of the pedigree exception. Mullakandov invoked his right to counsel prior to being interviewed by the FBI, and once he invoked that right, the agents needed to honor it scrupulously. *Gonzalez*, 764 F.3d at 165–66. Questions regarding employment, general medication needs, injuries or the like are administrative in nature, and the FBI agents questioning Mullakandov should not have expected such inquiries to elicit incriminating information regarding an alleged diamond

conspiracy. These questions and their responses are within the pedigree exception in this particular case. On the other hand, some questions, like those regarding Mullakandov's banking information, in this case seem more investigatory because the FBI agents questioning Mullakandov should have known that they were likely to elicit incriminating information regarding a conspiracy to defraud in the purchase and sale of diamonds. The Government cites *Gotchis* for the position that "banking information" is properly part of a pedigree interview, but that case is distinguishable because it did not involve banking information but instead addressed questions about employment asked of a defendant suspected of drug distribution. 803 F.2d at 79 ("[S]ince procurement of employment data would in most instances be . . . innocent and . . . useful for purposes of booking and arraignment . . ., we decline to create an exception forbidding routine questions about employment when the defendant is suspected of intent to distribute drugs.").

To the extent that Mullakandov was asked questions that in this case fall outside the pedigree exception, those statements are suppressed. The Government may move in limine to admit specific statements or the fruits of such statements pursuant to the principles outlined above.

## VII. CONCLUSION

For the foregoing reasons, Defendants' motions are DENIED in part and GRANTED in part as follows:

1. Nizamuden Akbari and Arkadiy Israilov (Dkt. No. 160)

    a. Motion to sever Count Two from Counts One and Three is DENIED;

2. Menachem Abramov (Dkt. No. 147)

    a. Motion for a separate trial is DENIED;

3. Shalom Muratov (Dkt. No. 152)

   a. Motion for a separate trial is DENIED;

4. Godel Sezanayev (Dkt. No. 159)

   a. Motion to dismiss Count Two for lack of venue is DENIED;

   b. Motion to sever from his co-defendants in Counts One, Two and Three and the acts in Count One is DENIED; and

   c. Motion for a separate trial is DENIED;

5. Mark Mullakandov (Dkt. No. 157)

   a. Motion for a separate trial is DENIED;

   b. Motion to suppress all post-arrest statements is GRANTED in part and otherwise DENIED. Responses to questions that are not within the pedigree exception to the *Miranda* rule are suppressed. The Government may move in limine to admit specific statements or the fruits of such statements;

   c. Motion to direct disclosure of interviewed individuals and any recorded notes of said interviews is DENIED, except as agreed by the Government;

   d. Motion to compel disclosure of exculpatory and impeachment materials at least thirty days before trial is DENIED;

   e. Motion to compel production of Rule 404(b) evidence sixty days before trial is DENIED, but the Court will hold the Government to its representation that it will "provide notice at a reasonable time";

   f. Motion to compel notice of expert testimony is GRANTED in part. The Government shall disclose its intention to use any expert testimony during its case-in-chief at trial and the general subject matter of the testimony, as soon as it

determines that it is likely to do so. The parties shall then meet and confer to attempt to agree on a disclosure schedule and shall seek the Court's assistance in the event they are unable to agree; and

     g. Motion to compel an early witness list is DENIED;

6. Manashe Sezanayev (Dkt. No. 156)

     a. Motions are DENIED as moot in light of his guilty plea;

7. The Court's foregoing rulings shall apply to any Defendant (regardless of whether he joined the underlying motion) to the extent such ruling is not specific to the facts or circumstances of the particular moving Defendant;

8. Defendants shall raise any *Bruton* issues as to the Government's evidence in their motions in limine; and

9. Defendants shall provide at least forty-eight-hours' notice to all counsel and the Court of their intention to introduce co-defendant statements at trial; and any co-Defendant objecting on *Bruton* grounds, shall do so at least twenty-four hours before such statement is to be introduced.

Dated: May 22, 2018
      New York, New York

                                 **LORNA G. SCHOFIELD**
                           **UNITED STATES DISTRICT JUDGE**